UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE JENNIFER STONE-LOWE, | No. 2:25-cv-00002-DAD-SCR |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

For the reasons that follow, the court recommends granting Plaintiff's motion for summary judgment, denying Defendant's cross-motion, and remanding for further proceedings.

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. 42 U.S.C. § 423(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); *Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler*, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB and separately for SSI on May 20, 2020, alleging in both a disability onset date of May 1, 2018.  Administrative Record ("AR") 17.[2]  The applications were disapproved initially on August 5, 2020 and on reconsideration on November 18, 2020.  AR 17.  On July 16, 2021 and October 15, 2021, ALJ Judith Kopec presided over hearings on Plaintiff's challenge to the disapprovals.  AR 36-45 (July 16 transcript), 46-88 (October 15 transcript).  Plaintiff appeared in propria persona and testified at the hearing.  AR 46, 48-49, 59-80.  Vocational Expert ("VE") Cathleen Spencer also testified.  AR 80-85.

On March 21, 2022, ALJ Judith Kopec issued an unfavorable decision, finding Plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 17-30 (decision), 31-35 (exhibit list).  On January 31, 2023, after receiving a Request for Review as Exhibit 19B, dated April 7, 2022, and a Representative Brief as Exhibit 20E, dated June 25, 2022, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  AR 1-3 (decision), 4-5 (exhibit list).

On March 22, 2023, Plaintiff challenged the denial in *Stone-Lowe v. Commissioner of Social Security*, Case No. 2:23−CV−00545−KJN ("*Stone-Lowe I*").  AR 613-16.  On August 24, 2023, pursuant to the parties' stipulation, the matter was remanded to the Commissioner for further proceedings.  AR 607, 616.  On February 7, 2024, the Appeals Council held that ALJ Kopec's decision "did not sufficiently articulate how [Plaintiff's] statements about her back symptoms were inconsistent with other evidence in the record" and had discounted statements from medical providers that supported Plaintiff's assertions without explanation.  AR 620-21.  It noted that although the decision summarized various medical records, it failed to explain how these records were inconsistent with Plaintiff's testimony.  AR 620.  It also questioned ALJ Kopec's conclusion that Plaintiff's treatment history was inconsistent with allegations of worsening back pain.  AR 620-21.

On October 1, 2024, ALJ Vincent Misenti presided over a second telephonic hearing.  AR

---

[2] Two copies of the AR are electronically filed as ECF Nos. 7-1 and 7-2 (AR 1 to AR 933).

584-604 (transcript).  Plaintiff appeared with Jeffrey Milam as counsel and testified at the hearing.  AR 588-601.  VE Stephen Schmidt also testified.  AR 602-604.

On November 18, 2024, the ALJ issued an unfavorable decision, again finding Plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 564-76 (decision), 577-582 (exhibit list).

Without filing written exceptions with the Appeals Council, Plaintiff filed this action on January 1, 2025.  ECF No. 1; *see* 42 U.S.C. §§ 405(g), 1383c(3).  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 8 (Plaintiff's summary judgment motion), 12 (Commissioner's summary judgment motion).  Plaintiff submitted a reply brief on July 11, 2025.  ECF No. 15.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1973, and accordingly was, at 45 years old, a younger individual under the regulations as of the alleged disability onset date.  AR 574; *see* 20 C.F.R §§ 404.1563(c), 416.963(c) (same).  Plaintiff has a GED, the equivalent of a high school education, plus some college experience, and can communicate in English.  AR 60, 316, 318.  She worked as a janitor at a casino from January 2012 to January 2015, and again from February 2018 through May 2018.  AR 318.  Her asserted conditions include sciatica, scoliosis, pinched nerves, depression, ADHD, PTSD, anxiety based on panic disorder and phobias, pre-diabetes, allergies, and acid reflux.  AR 317.

## III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive[.]'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI). Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment[.]'" *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987)

4

(quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity [("RFC")] make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

////

# V. THE ALJ's DECISION

In the most recent decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since May 1, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease and scoliosis of the lumbar spine, degenerative disc disease of the cervical spine, depressive disorder, and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps and stairs and never climb ladders and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work around unprotected heights. The claimant must avoid concentrated exposure to moving, mechanical parts. The claimant is limited to simple tasks.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 28, 1973 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

6

AR 566-76.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 576.

## VI.  ANALYSIS

### A.  The ALJ Erred in Discrediting Subjective Testimony

#### 1.  Subjective Testimony

##### a.  Function Report

Plaintiff's June 12, 2020 Function Report asserted that her overwhelming pain during any activity prevents her from doing anything.  AR 357.  When asked about her daily routine, she explained she starts each morning by trying to "painfully stretch out the stiffness and cramps[.]"  AR 358.  She then attempts to do household chores, but they depress her because they remind her that she "can no longer do anything."  AR 358.  She particularly struggles with chores involving excess lifting or bending, and needs a chair if the chore involves standing for periods of time.  AR 359.  She spends the rest of the day just managing her pain before going to bed.  AR 358.

Platiniff asserted that before the onset of her disabilities, in contrast, she could lift 5-10 pounds and bend, stretch, run, and walk without much limit.  AR 358.  She now asserts issues with lifting, walking, squatting, bending, standing, reaching, sitting, kneeling, climbing stairs, concentrating on tasks, completing them, and understanding and following instructions.  AR 362.  She estimates she can only walk 10 to 15 minutes before needing to stop and rest for 15 to 20 minutes.  AR 362.  She does not always finish tasks that she starts, and she mostly follows simple instructions by writing them down and itemizing them in order of importance.  AR 362.  She can handle changes in routine well, but not other forms of stress.  AR 363.  She sometimes uses a cane or walking stick, and is afraid that she may soon be unable to walk and need either surgery or a wheelchair.  AR 363.

Plaintiff still does not need help with personal care or reminders to take medicine, but she tries limiting the meals she makes for herself to ones that do not require a lot of time or a lot of standing.  AR 358-59.  Even with those limits, she is sometimes unable to finish making a meal

because of the pain.  AR 359.  Plaintiff had also become more reliable on phone and internet resources.  AR 362.

### b.  2021 Testimony

In October 2021, Plaintiff testified that as a janitor, she lifted between 5 and 20 pounds while at the Chicken Ranch Tribal Casino 2014, and between 5 and 10 pounds at the Black Oak Casino in 2016.  AR 61-62.  The latter had carts enabling her to push up to 15 pounds, which was still a lot due to an injury to her right shoulder from the time she spent at Chicken Ranch.  AR 62-63, 67.  She quit working in May 2018 when her legs were cramping to the point that she could only finish half of an eight-hour shift.  AR 64-65.  Based on both the cramping and prior problems with Plaintiff's back, for which she had started seeing a chiropractor, her boss at Diesel Turkey[3] recommended applying for DIB.  AR 65.

Plaintiff's first chiropractor, a practitioner in Sonora, mostly tried to manage Plaintiff's back pain by popping it.  AR 66.  Because she has scoliosis, that does not work.  AR 66.  By the time her Diesel Turkey boss told her to apply for disability, she was seeing Dr. Hitchling and had much better results.  AR 66.  Her primary physician agreed she should keep seeing Dr. Hitchling.  AR 66-67.

The right shoulder injury purportedly keeps Plaintiff from reaching to the side or overhead beyond a certain angle.  AR 68.  Her left leg is always numb to some extent, but walking causes both the calf and the side of his leg to feel numb.  AR 69-70.  She estimated she can now lift and carry no more than five pounds, stand or walk for no more than ten minutes, and sit for no more than five even with constant changes to her posture.  AR 71-72.

Mentally, Plaintiff's anxiety makes her desperate to leave any high-pressure situation at work, usually three times a week.  AR 73.  Plaintiff also occasionally struggles to get out of bed to do anything.  AR 74. She also tried taking office administration courses online with Independence University in 2018, but the pain kept her from concentrating.  AR 78.  Plaintiff was

---

[3] The transcript has Plaintiff's employer as "Diesel Turkey," though that may be a mistranscription of Diestel Turkey, a purveyor of "thoughtfully raised turkey products."  *See* Diestel Family Ranch.

prescribed 300 milligrams of gabapentin, but it made her "head want to explode."  AR 80.

Plaintiff uses marijuana to manage pain but denied taking any harder drugs.  AR 74-75. Plaintiff did test positive for methamphetamine use in September 2020 but asserted that was because she had taken Aleve Sinus & Cold.  AR 74-75.  The ALJ asked why Plaintiff did not have a nerve conduction study performed despite a doctor's July 7, 2020 recommendation to do so.  AR 75.  Plaintiff could not provide a substantive answer.  AR 76.

c.  2024 Testimony

In October 2024, Plaintiff testified that she had developed varicose veins in bilateral leg edema, or swelling, since the last hearing.  AR 597.  She had undergone a few MRIs and a month of physical therapy since the prior hearing, but no surgeries.  AR 590, 592.  The exercises that were part of her physical therapy have helped her find better ways to move, so she has not gone in three years, but it still hurts.  AR 590, 596.  Plaintiff uses massages, ice packs, heat packs, a TENS unit, and gabapentin and naproxen.  AR 591, 599.  Use of said gabapentin and naproxen, which occurs about five times a week, reduces the pain to a three or four out of ten.  AR 591.

Plaintiff estimated she could now lift five to seven pounds and sit for fifteen minutes at a time, having to move around for an hour in between.  AR 592-93.  She can stand for about ten minutes at a time but only when either rocking back and forth or spreading her legs apart.  AR 592.  She sometimes lays on the floor with her legs elevated and either ice packs or heat pads under her body, as well as a hard item under her back to compensate for the unnatural curve.  AR 596.  In an eight-hour workday, Plaintiff estimates she would lie down or elevate her legs for a total of three hours, sit in a chair for two, and stand or bend over for three.  AR 597.

Plaintiff can still shower herself, make the two meals a day she actually eats, clean the dishes, sweep a little, and do her own laundry.  AR 593.  She does not do yardwork, however, and has abandoned her hobbies because of how much pain they cause when she tries them.  AR 593-94, 598.  She drives somewhere and back about five times a week, mostly to the food bank, the grocery store, and cheerleading practice.  AR 588, 594-95.  Plaintiff cannot, however, sit through an entire cheerleading session.  AR 594.

Plaintiff testified at first to having depression, but then clarified it was really only because

she lives with a specific person she identifies as a narcissist. AR 599-600. She lived in a junkyard back in 2018, moved in with this narcissist around 2020, and has tried to move out ever since. AR 600-01. Back when she was living in the junkyard, she would cry whenever she saw someone with a cane or walker because she did not want that to become her future. AR 601. She still cries, but is unsure if it relates to the depression. AR 601.

### 2. ALJ Holding

After summarizing the medical record (AR 570-71), the ALJ found in 2024 that Plaintiff's testimony as to the intensity, persistence and limiting effects of these symptoms was not completely consistent with the medical record. AR 571. He noted that Plaintiff testified to daily activities like driving ten times a week – if driving to and back from one location counts as twice – doing the laundry, cleaning, cooking, washing dishes, and shopping. AR 572. She had not testified to any psychiatric issues that did not stem from tensions with her roommate. AR 572. She had also admitted that the use of medications reduced her pain to a three or four out of ten. AR 571-72. Her medical record further showed that her symptoms were managed with conservative treatment, such as medication and epidural injections. AR 572 (citing AR 416-17, 453, 485, 880). Physical examinations also did not support her assertion that she needs an assistive device. AR 572.

### 3. Governing Law

Evaluating a claimant's subjective testimony is a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. *Id.* Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ can only reject the claimant's testimony about the severity of such symptoms if there are "'specific, clear and convincing

reasons for doing so.'" *Id.* at 1014-15 (internal citations omitted); *see also Smartt v. Kijakazi*, 53 F.4 489, 494 (9th Cir. 2022) (applying this standard even "[w]hen objective medical evidence is inconsistent with a claimant's subjective testimony").

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas*, 278 F.3d at 958.

Evaluating the "intensity and persistence" of the symptoms of an impairment will involve considering all available evidence, including "medical history, the medical signs and laboratory findings, and statements about how…symptoms affect" the plaintiff. 20 C.F.R. § 404.1529(a). Relevant factors include, among others:

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms; […]
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; [and]
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.);

20 C.F.R. § 404.1529(c). As to the fourth and fifth factors (i.e., "iv" and "v" directly above), the Ninth Circuit permits ALJs to consider "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (quoting *Fair*, 885 F.2d at 603); *see also Plummer v. Berryhill*, Case No. 2:16-cv-00753-AC, 2017 WL 2972461 at *6 (E.D. Cal. July 12, 2017) (agreeing with the ALJ that "failure to pursue recommended treatment discredited…[plaintiff's] subjective testimony").

> 4. The Summary of Medical Evidence Does Not Constitute a Standalone Reason for Discounting Subjective Testimony

Plaintiff begins by citing various pieces of medical evidence that support her subjective

testimony. ECF No. 8 at 9-10. For example, multiple x-rays, MRIs, and nerve conduction studies of her lumbar spine confirm she has scoliosis with neuroforaminal narrowing and L4-5 lumbar radiculopathy. *Id.* (citing AR 431, 433, 529, 552, 924). Various records also support her assertions of a limited range of motion, a limping gait, decreased sensation and leg strength on her left side, an abnormal range of motion in her thoracolumbar spine, and an abnormal sensation along the right L5-S1 nerve distribution. ECF No. 8 at 10 (citing AR 416, 421, 427, 462, 491, 497, 534, 557, 856, 857, 879, 897, 908). Plaintiff asks how the ALJ can cite this evidence and still find that the medical record does not support her allegations. ECF No. 8 at 10 (citing AR 570-71). Defendant responds that such an argument asks the Court to reweigh the evidence, which would violate the substantial evidence standard of review. ECF No. 12 at 4-5.

The Court need not address the ALJ's general summary of medical evidence as a standalone argument supporting or refuting subjective testimony. It is the ALJ's duty to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Lambert*, 980 F.3d at 1277 (quoting *Treichler v. Commissioner of Social Security Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001))). Courts may only "review the reasons the ALJ asserts" for discounting testimony. *Lambert*, 980 F.3d at 1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). At best, the Court can uphold a decision written with "less than ideal clarity" if the ALJ's "path may reasonably be discerned." *See Molina*, 674 F.3d at 1121 (internal citations omitted).

The ALJ summarized the medical evidence before concluding that it did not support Plaintiff's claims about the "intensity, persistence and limiting effects of" the symptoms she experiences. AR 571. Only then did the ALJ identify the primary reasons for this finding: a conservative treatment history and daily activities. AR 572. The Court cannot conclude from this that the ALJ based his holding on the summary of medical evidence preceding it, except to the extent that it related to the two stated reasons. Even Plaintiff seems to recognize that this summary was more relevant to whether her impairments could produce the alleged pain and physical dysfunction, which the ALJ found they could in broad terms. ECF No. 8 at 10; AR 571.

The relevant question is whether either of the stated reasons for discounting subjective testimony reflect a harmful error. *See infra* VI.5-7. The Court will only reference the cited portions of the medical record as relevant to those reasons.

          5.   The ALJ Erred in Discounting Subjective Testimony Based on Conservative Treatment

A relevant factor in assessing a plaintiff's functional limitations is how her functioning is affected by medication or other forms of treatment. 20 C.F.R. §§ 404.1520a(c)(1). The Ninth Circuit has interpreted this to mean that courts can rely on the fact that the plaintiff was only prescribed "routine and conservative treatment" which includes "treat[ment] with an *over-the-counter pain medication*[.]" *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).

Here the ALJ cited Plaintiff's ability to manage symptoms through "conservative treatment such as medications, as well as an epidural injection" as a reason for discounting her testimony. AR 572 (citing AR 416-17, 453, 485, 880). Plaintiff correctly cites *Garrison*, which expressed "doubt" in a footnote that "epidural steroid shots…qualify as 'conservative' medical treatment." ECF No. 8 at 13; 759 F.3d at 1015 n. 20. Various courts in the Ninth Circuit have since applied this holding when analyzing the effect of treatment plans on RFC analysis. *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017); *Christine G.*, 402 F.Supp.3d at 926.

The medications Plaintiff was prescribed – gabapentin and naproxen – also arguably do not constitute conservative treatment even in isolation. District courts have noted that gabapentin, among other prescription medications, is only used to treat severe pain. *See Eldridge v. Berryhill*, 2018 WL 2357147, at *9, n.12 (S.D. Cal. May 23, 2018). More importantly, courts have acknowledged that an ALJ should not discount subjective testimony based on a plaintiff's response to treatment if physicians have had to increase dosages or add other medications to her prescription over time. *See Rose v. Berryhill*, 256 F.Supp. 1079, 1088 (C.D. Cal. 2017); *Nikkilee Ashley T. v. Commissioner of Soc. Sec.*, 2025 WL 1233525 at *10 (E.D. Wash. Apr. 29, 2025). The ALJ noted "medication changes" in February 2020, medication refills in May 2020, a

continuation of prior medication in September 2020, and medication refills in July 2024.[4] AR 571. What the ALJ does not acknowledge was that doctors stopped Plaintiff's prescription of three 300 mg capsules per day of gabapentin on February 12, 2020 (AR 416-17); prescribed three 100 mg capsules per day on February 21 and March 3, 2020 (AR 428); and prescribed two 100 mg capsules per day on September 18, 2020 (AR 485). She was only taking one 100 mg capsule per day as of her October 20, 2021 visit, where she was advised to only take as needed (AR 855-56, 858); was taking three 100 mg capsules daily by her July 25, 2024 visit (AR 875, 881); and had other prescriptions added at that appointment while being asked to continue the same dosage of gabapentin (AR 881-82). To say that Plaintiff is adequately managing her pain, when the medications used to treat it vary over time, is unwarranted from the record.

Whether the ALJ even provided sufficient basis for any discussion of Plaintiff's treatment history is unclear. Courts cannot label a course of treatment as conservative, and therefore as evidence that discredits subjective testimony, "absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Jones v. Dudek*, 2025 WL 1505151 at *6 (E.D. Cal. May 26, 2025) (quoting *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018) (quoting *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015))). At no point does the ALJ discuss more aggressive alternatives for treating the pain that keeps Plaintiff from standing or walking for prolonged periods at a time. The ALJ's decision to label her current course of treatment as "conservative" was therefore unwarranted. AR 572.

The ALJ did not adequately justify the decision to discount subjective testimony based on Plaintiff's treatment history.

6. The ALJ Erred in Discounting Subjective Testimony Based on Daily Activities

An ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). An ALJ can cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges. *See Molina*, 674 F.3d at 1113 (even where claimant's everyday activities reflect

---

[4] Although the ALJ's decision lists this visit's date as July 25, 2023 (AR 571), the cited exhibit in the record suggests that the ALJ made a typographical error in listing the year (AR 875-884).

difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment). In other words, an ALJ may rely on the fact that a plaintiff "engages in numerous daily activities involving skills that could be transferred to the workplace" if the ALJ "mak[es] specific findings relating to those activities." *Burch*, 400 F.3d at 680-81.

The ALJ failed to make such findings here. His analysis began and ended with a list of daily activities—"driving ten times per week, doing the laundry, cleaning, cooking, washing dishes, and shopping"—followed by an observation that Plaintiff does not need an assistive device to move. AR 572. To the extent that these activities are inconsistent with testimony that Plaintiff "could only sit for 15 minutes at a time, stand for 10 minutes at a time, and lift no more than five to seven pounds," the ALJ fails to explain how. ECF No. 12 at 4 (citing AR 592-93). As Plaintiff notes, an ALJ should not assume that the ability to perform tasks for moments at a time implies the ability to perform these tasks on a regular and continuing basis, as required in a workplace environment. ECF No. 8 at 12; *Garrison*, 759 F.3d at 1016. This is particularly true when, as here, Plaintiff testified that her pain forces her to toggle between sitting, standing, and moving around while constantly changing her posture. AR 71-72, 592-93.

The ALJ did not adequately explain why Plaintiff's daily activities merit discounting her subjective testimony.

### 7.  The Errors Are Not Harmless

In *Stout*, the Ninth Circuit concluded that an error is harmless when it is "inconsequential to the ultimate nondisability determination." 454 F.3d at 1055. The Ninth Circuit has clarified that the "relevant inquiry…is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were

15

supported by substantial evidence[.]'") (internal citations omitted).  If an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own.  *Stout*, 454 F.3d at 1055 (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir.2004)).

As discussed above, the ALJ erred in the assessment of Plaintiff's treatment regimen and failed to adequately analyze the effect of her daily activities.  As they were the only reasons provided for discounting subjective testimony, the ALJ's decision to do so was in error.  Defendant does not meaningfully dispute that fully crediting Plaintiff's testimony would result in a more restrictive RFC.  Most notably, her assertion that she would need to lie down for three hours and sit for two in an eight-hour workday (AR 597) brings into question whether she could be on her feet enough for any form of "light work" (AR 569).

The errors in discounting subjective testimony are not harmless and in themselves merit remand for further proceedings and reevaluation.[5]

**B.  The ALJ Did Err in Discounting Select Medical Opinions**

1.  <u>Governing Law</u>

In evaluating medical opinion evidence for applications filed after 2017, ALJs give no specific evidentiary weight to any particular type of opinion or source, but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness.  Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a) and (b).  The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and

---

[5]  Plaintiff does not seek remand for an automatic award of benefits under the credit-as-true rule in relation to any of her arguments.  See ECF No. 8 at 15, 19, 21, 25; *Garrison*, 759 F.3d at 1020.

evidentiary requirements").  20 C.F.R. § 404.1520c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are defined in the regulations as follows:

> Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how the other factors were considered.  20 C.F.R. § 404.1520c(b)(2).  The Ninth Circuit has confirmed that the new regulatory framework eliminates the "treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022).  Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.*  In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 2.  The ALJ Improperly Discounted NP Ronneburg's Opinion

#### a.  Opinion and Holding

On July 7, 2020, Nurse Melissa Ronneburg, FNP, opined via written report that Plaintiff's lumbar back pain and radiculopathy prevented her from walking more than two city blocks without resting.  AR 472.  She estimated that Plaintiff could sit for 15 minutes at a time and stand for 10.  AR 472.  Plaintiff could sit for about two hours in an eight-hour workday and stand or walk for less than that.  AR 472.  Any job that accommodates her RFC would need to permit

17

toggling between shifting, standing, and walking at will, along with unscheduled hourly breaks lasting one to two hours each.  AR 472-73.  Plaintiff would also need an assistive device when standing or walking even occasionally.  AR 473.

NP Ronneburg opined that Plaintiff could never lift and carry loads that are even less than 10 pounds, but admitted this limitation might not be permanent.  AR 473.  She also opined that Plaintiff would have "*significant limitations* in doing *repetitive* reaching, handling, or fingering" during the workday, but still said that she could manipulate both hands, fingers, and arms 100% of the workday.  AR 473.  She estimated Plaintiff could bend and twist at the waist 5% each of the 8-hour workday, but then said Plaintiff should only "Occasionally" twist, stoop, and climb stairs and "Never" crouch or climb ladders.[6]  AR 473-74.  Taken together, NP Ronneburg opined that Plaintiff's impairments would result in "good days" and "bad days" and cause her to miss work more than twice a month.  AR 474.

The ALJ found NP Ronneburg's opinion unpersuasive.  AR 573.  He first commented that the opinion was supported by a "minimal narrative" and Plaintiff's subjective complaints, with NP Ronneburg even admitting that some limitations might not be permanent.  AR 573.  NP Ronneburg's physical examination of Plaintiff on the same day, in contrast, revealed "a limp and compensated gait with full weight bearing and no assistive device, and severe pain with motion, but" without signs of apparent distress.  AR 573 (citing AR 491).  As to consistency, the ALJ again cited Plaintiff's "conservative, medication based treatment" and daily activities that conflict with the proposed limitations.  AR 573.

### b.  Analysis

The Court need not discuss the ALJ's holding as to consistency in detail.  The arguments presented mirror those used to discount Plaintiff's subjective testimony, which the Court has found inadequately explained.  *See supra* VI.A.  As an ALJ is required to discuss the consistency of every medical opinion, this alone merits remand for further assessment of NP Ronneburg's

---

[6] The ALJ misstates NP Ronneburg's opinion as also requiring that Plaintiff "never be exposed to temperature extremes, high humidity, pulmonary irritants, solvents/cleaners, or chemicals[.]" AR 573.  In reality, when asked if Plaintiff should "avoid exposure to" these substances, NP Ronneburg consistently answered "No[.]" AR 474.

18

opinion.  The question becomes whether the ALJ's discussion of supportability is also deficient.

Plaintiff disputes the ALJ's finding that NP Ronneburg's opinion was based on Plaintiff's subjective complaints rather than the examination that occurred the same day.  ECF No. 8 at 17; AR 573.  She first argues that this examination still revealed a limping and compensated gait, scoliosis in her lumbar spine, and severe pain with range of motion in her back.  ECF No. 8 at 17; AR 491.  As Defendant notes, however, the ALJ acknowledged the limp and compensated gait but contrasted this against the fact that it was full weight-bearing even without an assistive device.  ECF No. 12 at 6; AR 491, 573.

More problematic is the ALJ contrasting the fact that Plaintiff was in severe pain with motion against the fact that the general examination had a finding of No Acute Distress ("NAD").  AR 491, 573.  Plaintiff's reply cites out-of-circuit authority defining NAD to mean that "your patient will probably not become unstable in the next 5 minutes."  ECF No. 15 at 4 (quoting *Wanserski v. Colvin*, Case No. 1:14-cv-01033-DKL-JMS, 2015 WL 5692521, at *7 (S.D. Ind. Sept. 28, 2015)).  Notably, the Ninth Circuit has also penalized ALJs for relying on the lack of acute distress when disbelieving allegations of chronic pain.  *See, e.g., Reinertson v. Barnhart*, 127 Fed. Appx. 285, 290 n.2 (9th Cir. 2005) (rejecting the ALJ's finding of an inconsistency between "treating physicians generally [finding plaintiff] to be 'in no acute distress'" and her allegations of severe fibromyalgia).  The court in *Hernandez v. Comm'r of Soc. Sec.* noted that "district courts have questioned the applicability of the generic chart note of 'no acute distress' to chronic conditions."  Case No. 1:22-cv-00188-CDB, 2024 WL 3470855 at *5 (E.D. Cal. July 18, 2024) (citing *Toni D. v. Saul*, No. 3:19-cv-820-SI, 2020 WL 1923161, at *6 (D. Or. Apr. 21, 2020); *Richard F. v. Comm'r of Soc. Sec.*, No. C19-5220 JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019)).  The ALJ's opinion here reflects this scenario, relying solely on an NAD finding from the examination that occurred on the same day as NP Ronneburg's report.  AR 491, 573.

On its own, this error might be harmless and not merit remand.  The ALJ did present other reasons for finding NP Ronneburg's opinion unsupported, including the fact that she herself acknowledged not all the limitations therein might be permanent.  AR 473, 573.  Because the

ALJ's consistency analysis already merits remand, however, such remand should also extend to reconsideration of the ALJ's reliance on a single NAD finding when discounting the opinion.

### 3.  The ALJ Improperly Discounted PA Rebiero's Opinion

#### a.  Opinion and Holding

In response to a questionnaire dated September 30, 2024, Kristine Rebiero, PA, opined that based on MRI test results and neurological reports, Plaintiff's conditions have precluded her since 2018 from performing any full-time work at even a sedentary exertion level.  AR 919.  The most she could lift for 2-3 hours across an 8-hour workday is 5-10 pounds, primarily due to her back and leg pain.  AR 919.  She could sit for 5-10 minutes at a time without rest or support, stand or walk for 5-10 minutes at a time without rest or support, sit for a total of 60 minutes in an eight-hour workday, and stand or walk for a total of 60 minutes in an eight-hour workday.  AR 919.  Lying down for any part of the workday for which she is not standing, sitting, or walking would relieve some of her pain.  AR 919.

The ALJ found this opinion unpersuasive because it was supported by only "a minimal narrative and only referenced two medical records[.]"  AR 573.  The ALJ also held that neither PA Rebiero's contemporaneous examination nor her "medication based treatment" of Plaintiff supported her conclusions.  AR 573.  The ALJ also cited Plaintiff's response to "conservative" medication-based treatment, along with the epidural injection, as inconsistent with the opinion.  AR 573.

#### b.  Analysis

The ALJ's consistency analysis is based solely on the belief that Plaintiff's treatment was conservative.  AR 573.  As with the decision to discount subjective testimony for that reason, this is an inaccurate description given the Ninth Circuit's stance on epidural shots and constant changes to medication dosages.  *See supra* VI.A.5; ECF No. 8 at 21.  As an ALJ is required to discuss the consistency of every medical opinion, this alone merits remand for further assessment of PA Rebiero's opinion.

Unlike with NP Ronneburg's opinion, the ALJ also cites Plaintiff's treatment regimen in his supportability analysis by arguing that "*PA Rebiero's* medication based treatment" does not

20

suggest severe limitations.  AR 573 (emphasis added).  The ALJ supports this, however, by citing a nonexistent "Ex. 9F/29-38[,]" whereas said exhibit is only 10 pages.  AR 573.  For this error to be harmless as to supportability, the ALJ's other finding—that PA Rebiero provided only a minimal narrative and cited two medical records in support of her opinion—must be meritorious.  *See* AR 573.

Plaintiff argues that the cited MRI test results do show abnormal findings that would justify the opinion's proposed limitations, like "neural foraminal encroachment, marked bilateral foraminal encroachment, and contact with nerve roots[.]"  ECF No. 8 at 20 (citing AR 529, 920, 921, 924).  Plaintiff also cites an EMG and nerve conductions study that shows an L4-5 lumbar radiculopathy.  ECF No. 8 at 20 (citing AR 552).  Supportability, however, is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[.]"  20 C.F.R. § 404.1520c(c)(1).  In other words, "[s]upportability means the extent to which a *medical source supports* the medical opinion by *explaining* the relevant objective medical evidence."  *Fidel R.P. v. O'Malley*, 754 F.Supp.3d 986, 991 (N.D. Cal. 2024) (quoting *Woods*, 32 F.4th at 791-92) (emphasis added).  The issue is not whether the medical records PA Rebiero vaguely referenced could conceivably support her opinion but why, as Defendant notes, "no explanation [was] provided to support why the referenced diagnostic imaging or the prior physical exam findings demonstrated the need for" her proposed limitations.  ECF No. 12 at 8.

The principle that a medical opinion must be well-informed and justified predates the 2017 changes to how ALJs assess their evidentiary value.  Even when opinions by treating physicians were entitled to greater deference, the Ninth Circuit held in *Ford v. Saul* that an ALJ need not credit such an opinion if it "is brief, *conclusory*, and inadequately supported by clinical findings."  950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)) (emphasis added).  It continued to apply this principle under the post-2017 regulations in *Stiffler v. O'Malley*, where the ALJ discounted an opinion that had found "extreme" limitations in various functional areas.  102 F.4th 1102, 1106 (9th Cir. 2024).  The ALJ had noted that the opinion "include[d] only conclusions regarding functional limitations without

21

any rationale for those conclusions" and "did not reference any specific objective findings to support the extreme mental functioning limitations" therein. *Id.* at 1107. The Ninth Circuit agreed that that the doctor had therefore "failed to support his opinion 'by explaining the relevant objective medical evidence.'" *Id.* (quoting *Wood*, 32 F.4th at 791-92).

PA Rebiero's failure to justify the proposed limitations beyond vaguely referencing neurological studies and MRI results renders any defects in the ALJ's supportability analysis harmless. Because remand is appropriate for reevaluation of consistency with the record, however, the ALJ may use this opportunity to revisit the supportability analysis as well.

### 4. The ALJ Improperly Discounted Dr. Chandler's Opinion

#### a. Opinion and Holding

On October 1, 2018, Dr. Jacklyn Chandler conducted a mental status examination and a review of all relevant records. AR 408. Dr. Chandler did caution that her assessment was based on one session of client contact in a structured environment, and with limited background and correlative information. AR 410. Specifically, any "Background Information" and details of "Activities of Daily Living" were based purely on Plaintiff's own self-report. AR 408, 410.

As to her behavioral observations, she reported that Plaintiff walked with a normal gait, had dressed herself appropriately in casual clothing, and had adequate hygiene but still appeared unkempt. AR 409. Plaintiff was cooperative and maintained good eye contact throughout her mental status exam. AR 409. She was fatigued but well-oriented and could speak clearly and coherently. AR 409. Plaintiff exhibited a linear thought process, logical thought content, and a grossly intact memory without any delusions, hallucinations, or other signs of thought disorder. AR 409-10. However, her affect was restricted, her mood was moderately dysphoric, and her insight and judgment appeared compromised. AR 409.

Dr. Chandler characterized Plaintiff's intelligence, abstraction, and calculation abilities as "Intact," her attention as "Fair," her concentration as "Good," and her fund of knowledge and memory as "Adequate." AR 409-10. However, her insight and judgment were compromised, her mood was depressed, and her affect "Redistricted" [*sic*]. AR 410.

Dr. Chandler's functional assessment found that Plaintiff met the official diagnostic

criteria for Unspecified Depressive and Anxiety Disorder. AR 410. As to cognitive functioning and work-related abilities, Plaintiff exhibited mild difficulty maintaining attention and concentration, mild difficulty interacting with Dr. Chandler appropriately during the examination, and moderate difficulty enduring the stress of the interview. AR 410. When combined with "reported psychiatric history in less structured settings," this led Dr. Chandler to conclude that Plaintiff's ability to interact with the public and colleagues would be moderately impaired. AR 410. Plaintiff was, however, cognitively able to manage funds. AR 410.

Upon limiting his analysis to the portion of the report that actually reflected Dr. Chandler's own opinion, the ALJ found it unpersuasive. AR 574. As to supportability, the ALJ noted that Dr. Chandler was speculating as to Plaintiff's abilities in less structured settings compared to the examination. AR 410, 574. As to consistency, the ALJ contrasted Dr. Chandler's report of a depressed mood and restricted affect against other examinations in the record where mood and affect were normal. AR 574 (citing AR 422, 458, 462, 485, 491).

b. Analysis

Plaintiff first claims that the ALJ's failure to "consider the objective medical evidence or supporting explanations presented by Dr. Chandler" constitutes a categorical failure to assess opinion supportability, which would alone constitute reversible error. ECF No. 8 at 22-23. The ALJ did consider the supportability of the opinion, albeit briefly. Plaintiff later acknowledges this, asserting that the ALJ's rationale inherently lacks support because he mischaracterized Dr. Chandler's opinion as being "*only* related to Plaintiff's abilities in 'less structured settings[.]'" ECF No. 8 at 24 (quoting AR 574).

In reality, the ALJ effectively reached the opposite conclusion. He found the supportability limited because it was "speculative about the claimant's abilities in less structured settings[.]" AR 574. Dr. Chandler admitted as much, noting that her findings were "based on only one session of client contact, in a structured environment, with pre-authorized tests" and limited background information. AR 410. What limited background information Dr. Chandler did have was from Plaintiff's own self-report. AR 408. She then made observations related to Plaintiff's cognitive and social skills during the test before concluding that Plaintiff would be

23

moderately impaired in the workplace based on "reported psychiatric history and in less structured settings[.]" AR 410. Notably, Dr. Chandler does not articulate which portions of the psychiatric history suggest that Plaintiff would be so impaired.

The ALJ and Dr. Chandler were right to note that the degree by which a change in the environment would affect Plaintiff's RFC was unclear. The ALJ was therefore right to be skeptical of the conclusion that Plaintiff would be "moderately impaired" when interacting with others in less structured environments after having only "mild difficulty interacting appropriately with this examiner." AR 410. The ALJ's supportability analysis is without reversible error.

As to consistency, Plaintiff argues that the ALJ ignored two categories of evidence supporting Dr. Chandler's opinion. ECF No. 8 at 24. The ALJ did not ignore the first of these, the fact that Plaintiff has reported having anxiety, depression, and insomnia. *See id.* (citing AR 415, 421, 452, 457). The decision even acknowledges the diagnoses of anxiety and depression among Plaintiff's severe impairments in step two of the analysis. AR 567. The purpose of determining an RFC at this stage is to translate these impairments into limitations based on how the impairments affect the individual in question. That Plaintiff has anxiety or depression is irrelevant unless the medical record establishes that their symptoms limit his RFC.

Of greater concern is Plaintiff's argument that the ALJ also ignored records of office visits from August 2021 to July 2024 where she exhibited an impaired mood or affect. ECF No. 8 at 24 (citing AR 497, 558, 879, 898). Defendant responds that because the ALJ cited other treatment records where Plaintiff exhibited an appropriate mood and affect, the Court must uphold this interpretation of the record as rational even if Plaintiff's interpretation is as well. ECF No. 12 at 9-10 (citing AR 422, 441, 447, 458, 491; *Burch*, 400 F.3d at 680-81).

Defendnats are correct that the substantial evidence standard usually requires deference to the ALJ's interpretation, particularly as an administrative record will often include evidence that supports both sides. *Batson*, 359 F.3d at 1193; *see also White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009) (noting that plaintiff's allegation of cherry picking data "cuts both ways.") Because "[c]ycles of improvement and debilitating symptoms are a common occurrence" for a mental disability, however, the ALJ should not find a plaintiff capable of work merely due to this

24

waxing and waning. *See Garrison*, 759 F.3d at 1017. When a person "suffers from severe panic attacks, anxiety, and depression[,]" improvement does not necessarily mean that that the mental disability no longer affects the plaintiff's ability to function in the workplace. *Id.* (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). Symptoms must be interpreted in the context of the patient's overall well-being, with the understanding that symptoms that would prevent someone from functioning in the workplace may not manifest "while being treated and while limiting environmental stressors[.]" *Garrison*, 759 F.3d at 1017.

An ALJ could theoretically balance the various medical records against each other, determine that those reflecting an impaired mood or affect are too sparse to constitute a pattern or reflect a reduced RFC, and hold that the record is generally inconsistent with Dr. Chandler's findings. The ALJ's categorical failure to discuss medical records that might refute this holding, however, raises doubt as to whether he adequately conducted such an analysis.

The ALJ's citation to medical visits where Plaintiff exhibited a normal mood and affect constitutes the only consistency argument raised as to Dr. Chandler's opinion. Plaintiff is correct that the failure to adequately consider both supportability and consistency constitutes reversible error. ECF No. 8 at 23; 20 C.F.R. § 404.1520c(b)(2). The error is therefore harmful and merits remand for reassessment of how consistent Dr. Chandler's opinion is with the medical record.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 8), be GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) be DENIED;

3. The Commissioner's final decision in this matter be VACATED AND REMANDED for further proceedings, including further development of the record in accordance with this decision; and

4. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, either party may file written

objections with the court.  Such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 7, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE